# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73203-0-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| NATHON ALLEN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: April 25, 2016 |

SPEARMAN, J. — Nathon Allen was convicted by a jury of second degree burglary. He appeals, arguing that the information was deficient, the prosecutor committed reversible misconduct, and the trial court erred in using the pattern jury instruction defining reasonable doubt. Finding no error, we affirm.

## FACTS

At the beginning of October 2013, the manager of a Public Storage facility discovered that the owners of storage unit 625 had been sleeping in their storage space. The manager informed the owners that Public Storage prohibits using a storage unit as a residence. He restricted their access code so they could only enter the facility during business hours. The owners of unit 625 did not pay rent for the month of October. The manager disabled their access code for the security gate when rent was seven days overdue.

Burt Brienen owned the adjoining storage unit, unit 626. On October 16, 2013, Brienen reported that his unit had been burglarized. Brienen stated that items in his storage unit had been moved and several pieces were missing, including furniture, tools, and motorcycle gear. Brienen could not pinpoint when the theft occurred. Public Storage employees identified suspicious activity near unit 626 on a surveillance video from September 15, 2013.

In the first week of November, when rent on unit 625 was 30 days overdue, the manager cut the owners' lock, opened the unit, and conducted a brief visual inspection. At that time, unit 625 contained a bed, a rolling shelf with hangers and clothing, a dresser with a mirror, and empty food and drink containers. The unit was not full and there were no bulky items obstructing the manager's view of the contents. The manager stated that all of the contents of unit 625 could be loaded into one 12-foot van. The manager placed a Public Storage lock and a security tag on the unit. Unit 625 remained locked until its contents were sold at auction on November 25, 2013.

Allen purchased the contents of unit 625 at auction. Auction procedure allowed Allen two days after the sale to remove the contents. Public Storage employees observed Allen loading items from unit 625 onto a truck and large trailer on November 25, 26, and 27. On some occasions, Allen was accompanied by two or three other people.

Allen did not receive an access code to enter the Public Storage facility and he had to request access from an employee each time he drove on site. Kelly Mast, a Public Storage employee, opened the gate for Allen to drive into the

2

facility on the morning of November 27. A few minutes later Mast saw another man exit unit 625. Mast was surprised because Allen was alone in his truck when she opened the gate.

Later that same day, Brienen and his stepson visited unit 626. The items in their storage unit were not in their usual places and many items were missing, including tools, a motorcycle, two air conditioning units, collectible dolls, tires and rims, a bicycle, a king-sized bed, and a wooden bench. As Brienen and his stepson examined the unit to see what was missing, a portion of the sheet metal wall separating units 625 and 626 opened. The screws that originally secured the partition had been removed. With the interior wall open, unit 626 led directly into unit 625.

Brienen reported the burglary to the police and filled out an inventory of missing property. Brienen was unsure whether some items were taken in the first or the second burglary. He stated that the items on the first two pages of the inventory had all been taken in the second burglary, and the items on the third page were taken in the first burglary.

Police officers showed Brienen surveillance video of Allen loading items onto a truck on November 27. Brienen identified several of the items as property from his storage unit.

When police officers questioned Allen, he was very cooperative. Allen denied removing the partition separating the units, but stated that he had many of the missing items. Allen said that he had sold some of the furniture the officers were looking for, but he gave the officers other items from Brienen's inventory.

3

Some of the items that Allen returned had been taken in the first burglary, others had been taken in the second burglary.

The State charged Allen with second degree burglary. Based on the theft of the stepson's motorcycle and tools, the State also charged Allen with theft of a motor vehicle and first degree theft. The State later dismissed the two theft charges because Brienen's stepson was not available to testify.

At trial, Brienen testified at length about both burglaries. Allen did not object. During cross examination, Allen elicited details about when the first burglary occurred and what items were taken. A police officer testified to his investigation of the second burglary. Allen questioned the officer concerning the first burglary. On redirect, the investigating officer stated that he was not aware of anything linking Allen to the first burglary and that Allen does not appear on the surveillance video that presumably shows the first burglary.

In closing argument, the State's theory was that Allen worked with at least one accomplice to access Brienen's storage unit and steal Brienen's belongings. The prosecutor referred to the first burglary and stated that it was "likely" or "probable" that Allen was involved, but argued that what the State had to prove was that Allen participated in the second burglary. Verbatim Report of Proceedings (VRP) at 352, 361-62.

Allen's theory was that he unknowingly bought a storage unit that contained stolen property. He argued that the owners of unit 625 continuously burglarized Brienen's unit until they were locked out. Allen argued that this theory

4

explained why he was in possession of some of Brienen's property reported missing in the first burglary.

The jury convicted Allen of second degree burglary. Allen was sentenced to twelve months of electronic home detention. He appeals.

## DISCUSSION

Allen first argues that the information was constitutionally deficient because it failed to allege an element of the charged offense. The Sixth Amendment of the United States Constitution and article 1, section 22 of our state constitution require that charging documents include all essential statutory and nonstatutory elements of a crime. State v. Goodman, 150 Wn.2d 774, 784, 83 P.3d 410 (2004) (citing State v. Vangerpen, 125 Wn.2d 782, 787, 888 P.2d 1177 (1995)). The purpose of the requirement is to ensure that the accused has notice of the nature of the crime in order to prepare an adequate defense. State v. Tandecki, 153 Wn.2d 842, 846-47, 109 P.3d 398 (2005) (quoting State v. Kjorsvik, 117 Wn.2d 93, 101, 812 P.2d 86 (1991)).

When a charging document is challenged for the first time on appeal, we liberally construe the document in favor of validity. Tandecki, 153 Wn.2d at 849. We apply a two part test, examining (1) whether the necessary facts appear on the face of the charging document or may be fairly implied and, if so, (2) whether the defendant can show that he was actually prejudiced because the inartful language caused a lack of notice in the charging document. Id. (quoting Kjorsvik, 117 Wn.2d at 105-06). If the necessary elements are not found or implied caused a lack of notice, prejudice is assumed. State v. McCarty, 140 Wn.2d 420, 425,

5

998 P.2d 296 (2000) (citing State v. Moavenzadeh, 135 Wn.2d 359, 363, 956 P.2d 1097 (1998)).

Here, the State charged Allen with second degree burglary under RCW 9A.52.030(1), which provides that a person is "guilty of burglary in the second degree if, with intent to commit a crime against a person or property therein, he or she enters or remains unlawfully in a building other than a vehicle or a dwelling." The crime has two elements: (1) entering or remaining unlawfully in a building and (2) intent to commit a crime therein. State v. Brunson, 128 Wn.2d 98, 905 P.2d 346 (1995). RCW 9A.52.010(5) defines the "unlawful entry" element and states that a person "'enters or remains unlawfully' in or upon premises when he is not then licensed, invited, or otherwise privileged to so enter or remain."

The information charging Allen stated in relevant part:

> [T]he defendant Nathon George Allen in King County, Washington, on or about November 27, 2013, did enter and remain unlawfully in a building, located at 3600 East Valley Road, in said county and state, with intent to commit a crime against a person or property therein[.]

Clerk's Papers (CP) at 12. Allen argues that the information was deficient because it did not allege ownership of the premises. He asserts that he had the lawful right to enter storage unit 625 at the address listed in the information and the information failed to negate that right to enter.

Allen is mistaken. The information includes both of the elements of second degree burglary: unlawful entry and intent to commit a crime. At most, the language of the information may have been inartful in failing to specify that the charge concerned a storage unit other than unit 625, which Allen had a lawful

right to enter. But this fact may be fairly implied by the word "unlawfully," which necessarily refers to premises that Allen did not have a right to enter.[1] Allen makes no argument that he was prejudiced by the inartful language. Because the necessary facts appear in the charging document or may fairly be implied, and Allen has shown no prejudice due to inartful language, we conclude that the information was valid.

However, Allen argues that under State v. Klein, 195 Wash. 338, 341, 80 P.2d 825 (1938), the information must include language that someone held an ownership or occupancy right in the burglarized property superior to Allen's right. Allen's argument is unavailing.

At the time of the Klein opinion, the burglary statute did not refer to "unlawful entry" but instead criminalized entering "the dwelling-house of another" or breaking and entering "any building" where property is kept. Klein, 195 Wash. at 340 (quoting Rem. Rev. Stat § 2579). To prevail, the State had to prove that the burglarized building belonged to or was occupied by "another." Id. at 341-42. Under the current burglary statute, the State must prove "unlawful entry." This element was adequately charged in the information.

Furthermore, even under the prior burglary statute, an allegation of ownership was material only to show that the accused did not own the property and to protect the accused from a second prosecution for the same offense. Id. at 343-44 (quoting State v. Franklin, 124 Wash. 620, 215 P.29 (1923)). The

---

[1] Additionally, the certification for determination of probable cause clarified any confusion by specifying that the burglary charged was of unit 626.

information in the present case meets these purposes. The information alleges that Allen entered a building that he did not have a legal right to enter and sufficiently identifies the location to protect Allen from a second prosecution. Klein does not create a requirement to allege ownership or occupancy by another in charging second degree burglary under RCW 9A.52.030(1).

Next, Allen argues that the prosecutor committed reversible misconduct by inviting the jury to infer that Allen was guilty of an uncharged crime. A prosecutor's conduct is grounds for reversal if that conduct is both improper and prejudicial. State v. Monday, 171 Wn.2d 667, 676, 257 P.3d 551 (2011) (citing State v. Fisher, 165 Wn.2d 727, 747, 202 P.3d 937 (2009)). Prosecutorial misconduct is prejudicial if it "'had a substantial likelihood of affecting the jury's verdict.'" State v. Emery, 174 Wn.2d 741, 761, 278 P.3d 653 (2012) (quoting State v. Anderson, 153 Wn. App. 417, 427, 220 P.3d 1273 (2009)). When a defendant did not object to the alleged misconduct at trial, any error is waived unless the misconduct was so flagrant and ill-intentioned that it could not have been cured by instruction to the jury. Id. (citing State v. Stenson, 132 Wn.2d 668 727, 940 P.2d 1239 (1997)).

The prosecuting attorney has "'wide latitude in making arguments to the jury'" and may argue reasonable inferences from the evidence. Fisher, 165 Wn.2d at 747 (quoting State v. Gregory, 158 Wn.2d 759, 841, 147 P.3d 1201 (2006)). But a prosecutor must not refer to evidence outside the record or encourage the jury to convict on improper grounds. Id. (citing State v. Belgarde, 110 Wn.2d 504, 507-08, 755 P.2d 174 (1988)). It is improper for the prosecutor

to encourage jurors to convict based on a propensity to commit the crime charged. Id. We examine the prosecutor's alleged misconduct in "the full trial context," considering the issues, evidence, and jury instructions. Monday, 171 Wn.2d. at 675.

Allen argues that, by referring to the first burglary in closing argument, the prosecutor improperly encouraged the jury to infer that Allen was guilty of an uncharged crime and had a propensity to commit the crime charged. Near the beginning of the State's closing argument, the prosecutor said:

> [T]his is not about that first burglary that was reported. We're not here to prove beyond a reasonable doubt that the defendant participated in that burglary on October 16th. It may be likely, it may be probable, but it will not be one of the elements that the State must prove beyond a reasonable doubt.

VRP at 352. Allen did not object to this argument.

The prosecutor further argued:

> And it's important to remember when you're thinking about this case, think about that first burglary, what was reported, and think about November 27th. The first burglary we're not here to prove that the defendant was involved in. It's highly likely again because of some of that property that was found on his property, some of Burt's property—

VRP at 361. Allen objected to this argument but was overruled. The State continued:

> Property from that first burglary, as Burt told you, was found on Mr. Allen's property. It's probably highly likely that somehow there was a connection, but that's not what the State has to prove in this case...
> What has to happen is the State has to prove that the November burglary occurred and that Mr. Allen was part of it.
> And in that first burglary, the October 16th, there's that U-Haul video that no one knows about. And then of course there's

gaps. I mean, it could be anybody that was part of that first burglary.

But there's only one man that could have been a part of that second burglary. That was the man that purchased the unit at auction.

VRP at 362.

Allen argues that these references to the uncharged first burglary are analogous to the improper and prejudicial comments in State v. Boehning, 127 Wn. App. 511, 111 P.3d 899 (2005). In Boehning, the defendant was accused of three counts of rape of a child or, alternatively, three counts of first degree child molestation. At the close of evidence, the State dismissed the rape charges.. In closing argument on the molestation charges, the prosecutor suggested that the defendant was guilty of rape but the charges had been dismissed because the child/victim was not "comfortable" enough to testify about the rape at trial. Id. at 522.

On appeal, we held that the dismissed rape charges were wholly irrelevant to the State's case. The dismissed charges were not evidence and by referring to those charges the prosecutor was not arguing an inference from the evidence. Rather, the prosecutor's comments "impermissibly asked the jury to infer that Boehning was guilty of crimes that had been dismissed and were not supported by trial testimony." Id. at 522 (citing State v. Torres, 16 Wn. App. 254, 256, 554 P.2d 1069 (1976)).

The present case is distinguishable. Here, Brienen referred to the first burglary in testimony. Allen elicited testimony from the investigating officer

10

concerning the first burglary. Evidence of the first burglary was key to Allen's theory of the case. In closing, Allen argued:

> Things were taken in September, and they went someplace. He had a lot of property taken in September. And one of the things that was taken was a cutting torch. And that cutting torch was in the unit that Nathon Allen put a bid in on because that's one of the things that was returned.
>
> Nathon was not in the video from September...That cutting torch went from Mr. Brienen's unit to the unit on which Nathon put a bid, and it did so between September to the point at which this other person vacated the unit.

VRP 375-76. Testimony concerning the first burglary was in evidence, and the prosecutor permissibly argued an inference from that evidence. Considering the context of the entire trial, the prosecutor did not err by referring to the first burglary in closing argument. There was no misconduct.

Finally, Allen argues that the trial court erred in instructing the jury using the pattern reasonable doubt instruction in 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 4.01 at 27 (3d ed. Supp. 2014-15) (WPIC). Allen acknowledges that our Supreme Court has approved WPIC 4.01 and requires trial courts to use it "until a better instruction is approved." State v. Bennett, 161 Wn.2d 303, 318, 165 P.3d 1241 (2007). Nevertheless, Allen argues that the instruction is constitutionally deficient. WPIC 4.01 instructs the jury that "[a] reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence." Allen argues that this phrasing impermissibly requires jurors to articulate a reason for doubt and thus undermines the presumption of innocence.

Allen did not object to the reasonable doubt instruction at trial. He can raise the objection for the first time on appeal only if it concerns a "manifest error affecting a constitutional right." RAP 2.5(a)(3). An error is manifest if it resulted in actual prejudice and if it was obvious from the record before the trial court. State v. Kalebaugh, 183 Wn.2d 578, 584, 355 P.3d 253 (2015) (citing State v. O'Hara, 167 Wn.2d 91, 99-100, 217 P.3d 756 (2009)). A jury instruction that misstates the law is manifest error. Id. at 584-85.

Here, however, the jury instruction did not misstate the law. Our Supreme Court has long recognized WPIC 4.01 as an accurate statement of the law. Bennett, 161 Wn.2d at 317-18. And this court has already rejected the argument that the instruction undermines the presumption of innocence. State v. Lizarraga, 191 Wn. App. 530, 567, 364 P.3d 810 (2015). Allen's argument is without merit.

We conclude that the trial court did not err in using WPIC 4.01 to instruct the jury in reasonable doubt.

Affirmed.

WE CONCUR: